LATITS v PHILLIPS

Docket No. 304236. Submitted August 7, 2012, at Detroit. Decided August 21, 2012. Approved for publication October 9, 2012, at 9:00 a.m.

Debbie Jean Latits, as personal representative of the estate of Laszlo J. Latits, brought an action in the Wayne Circuit Court against Ferndale police officer Lowell Phillips, alleging assault and battery and gross negligence in connection with the police chase and shooting that caused Latits's death. Latits, who had been pulled over for a traffic violation, fled in his vehicle when the officer who stopped him noticed illegal drugs in his glove compartment. After Latits drove into one of the patrol cars that were attempting to stop his vehicle, defendant shot Latits, who later died from his wounds. Defendant moved for summary disposition under MCR 2.116(C)(7) on the basis of governmental immunity. The court, Susan D. Borman, J., denied the motion on the ground that there were factual questions regarding whether defendant had probable cause to detain Latits. Defendant appealed.

The Court of Appeals *held*:

1. Plaintiff's argument that defendant may not rely on police reports to support his motion for summary disposition was without merit. While a motion for summary disposition must be supported by admissible evidence, the evidence need not be in admissible form. Apart from the fact that the police reports might have been admissible under MRE 803(6) or (8), defendant offered the police reports for the officers' personal observations, about which the officers could have testified at trial.

2. Defendant was entitled to governmental immunity for the assault and battery claim because the acts in question were (1) undertaken during the course of employment and he was or reasonably believed he was acting within the scope of his authority, (2) undertaken in good faith or not with malice, and (3) discretionary as opposed to ministerial. Whether defendant exercised poor judgment or was mistaken that he was justified in using deadly force was irrelevant to this analysis, as was whether defendant had probable cause to arrest or detain the decedent. Defendant's stated reason for firing his weapon was to ensure his

safety and the safety of others, this reason was supported by the testimony in the police reports, and plaintiff offered no evidence to support a finding of malice. The significance of the discrepancy between defendant's testimony that he fired four shots and the fact that seven shell casings from defendant's gun were found at the scene was merely speculative.

3. Plaintiff's allegations of gross negligence do not defeat defendant's claim of governmental immunity. Although defendant would not have been entitled to governmental immunity for conduct that amounted to gross negligence that was the proximate cause of the injury or damage, the gravamen of plaintiff's complaint was that defendant intentionally and improperly shot Latits. Intentional torts may not be transformed into claims of gross negligence by artful pleading.

Reversed and remanded for entry of an order of summary disposition in favor of defendant.

1. EVIDENCE — ADMISSIBILITY OF EVIDENCE — SUMMARY DISPOSITION.

Evidence offered to support a motion for summary disposition must be substantively admissible but need not be in admissible form (MCR 2.116[G][6]).

2. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES — TORTS — INTENTIONAL TORTS — USE OF DEADLY FORCE.

A governmental employee is entitled to immunity from suit for intentional torts based on acts that were (1) undertaken during the course of employment if the employee was or reasonably believed he or she was acting within the scope of his or her authority, (2) undertaken in good faith or not with malice, and (3) discretionary as opposed to ministerial; whether a governmental employee who used deadly force exercised poor judgment in doing so or was mistaken that the use of deadly force was justified is irrelevant to whether that employee is entitled to immunity from suit (MCL 691.1407[2]).

3. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES — TORTS — INTENTIONAL TORTS — PLEADINGS.

Whether the gravamen of an action involves an intentional tort or negligence is determined by considering the entire claim; a claim based on an intentional tort may not be transformed by artful pleading into a claim of gross negligence in order to avoid a defense of governmental immunity (MCL 691.1407[2]).

*Kevin Ernst* for plaintiff.

*Cummings, McClorey, Davis & Acho, P.L.C.* (by *Karen M. Daley* and *T. Joseph Seward*), for defendant.

Before: SAAD, P.J., and SAWYER and CAVANAGH, JJ.

PER CURIAM. Defendant Lowell Phillips, a police officer for the city of Ferndale, appeals an order of the circuit court denying his motion for summary disposition of claims arising from the death of motorist Laszlo J. Latits under MCR 2.116(C)(7). We reverse and remand.

While the parties disagree over many of the factual details and the interpretation of various facts, the basic facts needed to resolve this matter are undisputed. The events that gave rise to this action began with a routine traffic stop of Latits's vehicle by Ferndale Police Officer Ken Jaklic. Latits initially stopped as directed. When Latits opened his glove compartment, presumably to retrieve his registration and proof of insurance, Jaklic observed a bag of marijuana. Jaklic ordered Latits out of the vehicle. Instead of complying, Latits took off in his vehicle, with Jaklic giving chase. The chase was soon joined by three other patrol cars, including defendant's.

The videos taken by the patrol cars' dashboard cameras show Latits fleeing from and eluding the police, even after the officers attempted a PIT maneuver.[1] Eventually, Latits drove into a parking area in Detroit near the State Fairgrounds. The four police

---

[1] According to defendant's deposition testimony, a PIT (precision intercept technique) is a maneuver in which an officer giving chase pushes the rear fender of the suspect's vehicle with the patrol car's opposite front fender, causing the suspect's vehicle to spin out of control and come to a stop. In this case, the video evidence shows Latits' vehicle fishtailing on the wet pavement, but the PIT did not immediately end the chase.

officers attempted to box in Latits' vehicle. Latits, still attempting to evade capture and drive off, rammed one of the patrol cars.[2]

Defendant left his vehicle and approached Latits's vehicle from the passenger side with his weapon drawn. As Latits continued to attempt to evade capture by driving backwards, defendant fired four times.[3] Shortly thereafter, Latits's vehicle came to a stop. Latits was arrested and transported to the hospital, where he later died from three gunshot wounds to the arm, chest, and abdomen. The autopsy also disclosed the presence of alcohol and hydrocodone in Latits's system.

In his deposition, defendant described his decision to shoot as follows:

> I was involved in a pursuit, I was informed by two officers of attempted ramming and ramming. When I got out of my vehicle, I observed him ram the officer, Officer Jaklic. As I approached his vehicle, I could hear the engine revving, he looked back over his shoulder directly at me. As he started moving I felt fear for my life, I wasn't -- I wasn't sure as to how -- how much room I had between his vehicle and my vehicle. I fired to ensure my own safety and the safety of my fellow officers.

(It should be noted that the reference to ramming Jaklic is actually to ramming Jaklic's patrol car while Jaklic was still in the vehicle.)

Plaintiff Debbie Jean Latits, personal representative of Latits's estate, filed a complaint, alleging a claim of

---

[2] The police reports also describe other attempts by Latits to ram the police cars involved.

[3] The exact details of the firing of the shots is somewhat unclear. In his deposition, defendant described firing a four-round burst and stated that he did not fire any more shots. However, seven shell casings that matched the casings from defendant's firearm were recovered at the scene. None of the other officers discharged their weapons.

gross negligence and a claim of assault and battery. Defendant thereafter moved for summary disposition on the basis of governmental immunity. The trial court denied the motion with only brief explanation, stating that there were "issues of fact here" and that the videos were "very interesting and very troubling."

The relevant standard of review was summarized by the Supreme Court in *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008):

> We review de novo a trial court's determination regarding a motion for summary disposition. Under MCR 2.116(C)(7), the moving party is entitled to summary disposition if the plaintiff's claims are barred because of immunity granted by law[.] The moving party may support its motion for summary disposition under MCR 2.116(C)(7) with affidavits, depositions, admissions, or other documentary evidence, the substance of which would be admissible at trial. The contents of the complaint are accepted as true unless contradicted by the evidence provided. [Citations and quotation marks omitted.]

We begin by noting that this passage addresses plaintiff's argument that defendant's motion for summary disposition cannot be supported by factual statements from police reports because police reports are inadmissible as evidence at trial. Plaintiff's argument is flawed for two reasons. First, as the quotation alludes to, while a motion for summary disposition must be supported by admissible evidence, that evidence "does not have to be in admissible form." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009); see also *Maiden v Rozwood*, 461 Mich 109, 123-124; 597 NW2d 817 (1999). In this case, defendant's reliance on those reports was in reference to the officers' personal observations, and those officers could have testified at trial to the substance of the

material in the reports. That evidence would be admissible. Second, it is not necessarily the case that those reports would, in fact, be inadmissible at trial. As noted in *Maiden*, 461 Mich at 124-125, police reports are "plausibly admissible" under MRE 803(6), though any secondary hearsay within the documents would not be. They might also be admissible under MRE 803(8). See *In re DMK*, 289 Mich App 246, 258 n 6; 796 NW2d 129 (2010). But, because the officers could testify about their own observations, we need not resolve that issue.

We turn to the question whether defendant was entitled to the protection of governmental immunity under MCL 691.1407(2) for the claim based on the intentional tort of assault and battery. Because this involves a claim against an individual governmental employee rather than a governmental entity, the burden is on defendant to raise and prove immunity as an affirmative defense. *Odom*, 482 Mich at 479. To establish his entitlement to immunity, defendant must show:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (c) the acts were discretionary, as opposed to ministerial. [*Id.* at 480.]

Plaintiff concedes the first and third prongs of the test, but argues that defendant was not acting in good faith. We disagree.

The substance of plaintiff's argument is that defendant exercised poor judgment or was mistaken about his justification in using deadly force. But even if we were to agree with plaintiff, it would not affect the

immunity analysis. As the Court explained in *Odom*, showing that an officer made a mistake does not defeat an immunity defense. In *Odom*, the claim was for false imprisonment and malicious prosecution. The trial court denied summary disposition because "there remained a question of fact whether defendant lacked probable cause to detain or arrest plaintiff." *Odom*, 482 Mich at 481. But, as the Court explained, that did not resolve the governmental immunity question:

> The mere existence of probable cause, however, is not the proper inquiry. A police officer would be entitled to immunity under *Ross* [*v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984)] if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken. Yet the existence of probable cause is relevant to the analysis; a claim of false arrest or false imprisonment cannot be sustained if the arrest was legal.
>
> The Court of Appeals held that there remained a question of fact whether defendant's conduct was justified and "objectively reasonable." This objective analysis is also not the proper *Ross* inquiry. The good-faith element of the *Ross* test is subjective in nature. It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent. [*Id*. at 481-482.]

Thus, while plaintiff would ultimately have to prove that defendant was not justified in using deadly force in order to prevail at trial on her assault and battery claim, this showing is inadequate to defeat the defense of governmental immunity. As long as defendant can show that he had a good-faith belief that he was acting properly in using deadly force, he is entitled to the protections of governmental immunity regardless of whether he was correct in that belief. And there is no evidence in this case to show that defendant did not have such a belief.

Defendant's stated reason for firing his weapon was to ensure his safety and the safety of others. The facts support the conclusion that defendant would have such a reason, and plaintiff presented no evidence to establish any other motivation. Defendant testified in his deposition that he was informed that Latits had rammed and attempted to ram police cars, that there had been a chase, and Latits had engaged in erratic driving. That defendant actually would have had this belief is supported not only by his own testimony, but by the statements of the other officers involved as recorded in the police reports, about which the officers would presumably testify at trial.

Plaintiff, on the other hand, identifies no evidence supporting a finding of malice. Plaintiff spends a good portion of her argument on this point discussing whether the use of deadly force was justified. But the standard in evaluating the governmental immunity question is not whether, when viewing the facts objectively with the benefit of hindsight, the use of deadly force was justified. Rather, as discussed in *Odom*, 482 Mich at 481, the standard is a subjective one from the perspective of defendant with respect to whether he was acting in good faith. Whether the legal standards for acting in self-defense or defense of others was met is not controlling. Whether the information relayed to defendant by the other officers was accurate is not relevant.[4] What is relevant was whether defendant, in good faith, believed that he needed to fire his weapon to protect himself and others.

[4] In her brief, plaintiff claims that Jaklic and Officer Andrew Wurm falsely radioed that Latits had rammed their vehicles. But even assuming plaintiff's claim to be true, that speaks to those officers' good faith, not defendant's. That is, if defendant heard this information and believed it, the fact that it was false would not establish defendant's malice.

In this regard, we find the United States Supreme Court's opinion in *Brosseau v Haugen*, 543 US 194; 125 S Ct 596; 160 L Ed 2d 583 (2004), somewhat instructive. In that case, police officer Rochelle Brosseau shot the plaintiff in the back as he was attempting to flee in a vehicle. Her stated reason for doing so was her concern for the safety of the other officers on foot in the area, as well as any civilians who might be in the plaintiff's path. *Id.* at 196-197. The plaintiff sued Brosseau under 42 USC 1983. Ultimately, however, the Court declined to determine whether Brosseau employed excessive force under the standards of *Tennessee v Garner*, 471 US 1; 105 S Ct 1694; 85 L Ed 2d 1 (1985), and *Graham v Connor*, 490 US 386; 109 S Ct 1865; 104 L Ed 2d 443 (1989).[5] Rather, it concluded that the established case-law did not "squarely govern[]" the *Brosseau* case and that "Brosseau's actions fell in the 'hazy border between excessive and acceptable force.' " *Brosseau*, 543 US at 201, quoting *Saucier v Katz*, 533 US 194, 206; 121 S Ct 2151; 150 L Ed 2d 272 (2001) (quotation marks omitted). Therefore, the Court concluded that Brosseau was entitled to qualified immunity under 42 USC 1983 because it was not clearly established that her actions violated the Constitution. *Brosseau*, 543 US at 201.

Of course, unlike *Brosseau*, the case at bar does not involve a claim under § 1983 or issues of qualified immunity. But *Brosseau* does provide guidance on two points. First, it draws into question plaintiff's claim that the force was excessive. If Brosseau's actions were on the "hazy border" between acceptable and excessive force, defendant's actions in the case at bar would seem to more clearly fall into the area of acceptable force. Second, and more to the point, if Brosseau's actions,

---

[5] The United States Court of Appeals for the Ninth Circuit concluded that Brosseau had, in fact, employed excessive force. *Brosseau*, 543 US at 195.

and the circumstances surrounding her decision to shoot Haugen, did not clearly establish excessive force, then the circumstances surrounding defendant's decision to shoot Latits do not establish malice on behalf of defendant.

The closest that plaintiff comes to defeating defendant's claim of acting in good faith is that three rounds apparently fired by defendant are unaccounted for. Defendant has maintained that he fired a single, four-round burst at Latits. Yet seven shell casings were recovered at the scene. But because there is no explanation of the extra three rounds being fired, plaintiff can merely speculate about when those rounds were fired, whether they are the rounds that struck Latits, and what defendant's motivation was in firing those rounds.

In sum, defendant was entitled to summary disposition on the assault and battery claim if he could show that it was uncontroverted that he acted in good faith. Defendant is able to present evidence that he was acting in good faith at the time that he shot Latits. Plaintiff has not identified any contradictory evidence. Therefore, summary disposition should have been granted to defendant on this claim.

We turn next to the issue of plaintiff's gross negligence claim. As discussed in *Odom*, 482 Mich at 479-480, the standard is different for establishing governmental immunity with respect to negligent torts and intentional torts. For negligent torts, the governmental employee is not entitled to the protection of governmental immunity if the "conduct amounted to gross negligence that was the proximate cause of the injury or damage." *Id.* at 480. Paragraph 30 of plaintiff's amended complaint alleges that the following items constitute gross negligence rather than the intentional tort of assault and battery:

b. Failure to follow proper police procedures;

c. Failure to appreciate that Laszlo J. Latits posed no threat of harm to Defendant Officer or anyone else;

d. Recklessly discharging multiple rounds from Defendant's handgun;

e. Recklessly pointing a gun at or in the direction of Laszlo J. Latits;

f. Fraudulently conspiring to cover-up their gross negligence and/or willful and wanton misconduct by filing false police reports and providing false information to authorities regarding the facts and circumstances surrounding the shooting of Laszlo J. Latits;

g. Any and all additional acts of gross negligence and/or willful and wanton misconduct as may come to be known through the course of this lawsuit.

These allegations do not defeat defendant's claim of governmental immunity. Defendant did not recklessly shoot Latits. There is no claim that Latits was shot as the result of an accidental discharge of defendant's firearm or that defendant otherwise had not intended to shoot Latits. Negligence might have been the proper claim if defendant had unintentionally pulled the trigger or if defendant had been aiming at a different target but accidentally shot Latits instead. But there was nothing negligent or reckless about defendant's decision to point his firearm at Latits and shoot—he did so intentionally.

Furthermore, the claim that defendant failed to appreciate that Latits did not pose a risk of harm may have some bearing on whether defendant made the proper decision to shoot, but it does not alter the fact that it was an intentional decision to shoot. Similarly, any failure to follow procedures would potentially be relevant to the correctness of the decision to shoot, but not whether that decision was intentional. As for the

allegation of a cover-up, because that claim involves events that occurred after the shooting, it cannot establish anything with regard to the shooting itself. The final paragraph contains no substantive allegation whatsoever.

As the Court noted in *Maiden*, 461 Mich at 135, "the gravamen of plaintiff's action is determined by considering the entire claim." That is, plaintiff cannot avoid the protections of immunity by "artful pleading." *Id.* Moreover, "this Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *VanVorous v Burmeister*, 262 Mich App 467, 483-484; 687 NW2d 132 (2004).

The gravamen of plaintiff's claim against defendant is that he intentionally and improperly shot Latits. Plaintiff's claim is one of an intentional tort, and no amount of artful pleading can change that fact. And, as discussed earlier, defendant is entitled to the protections of governmental immunity for an intentional tort claim arising from that shooting.

Reversed and remanded to the trial court with instructions to enter an order of summary disposition in favor of defendant on plaintiff's claims against him. We do not retain jurisdiction. Defendant may tax costs.

SAAD, P.J., and SAWYER and CAVANAGH, JJ., concurred.