# STATE OF MICHIGAN

# COURT OF APPEALS

BILLY ROWE and ROBIN ROWE,

UNPUBLISHED
February 5, 2015

Plaintiffs-Appellees,

v

No. 317748
Calhoun Circuit Court

DETECTIVE/SERGEANT RONALD AINSLIE,

LC No. 2013-001488-NO

Defendant-Appellant,

and

TROOPER STEVE LAMB and TROOPER
DENNIS MILBURN,

Defendants.

Before: O'CONNELL, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

On a Friday morning in March 2011, the State Police arrested plaintiff Billy Rowe, believing that six years earlier he knowingly downloaded child pornography from the internet. The downloading occurred in Genesee County. The actual suspect—another fellow named Billy Rowe—confessed to the crime during a 2005 interview with a state trooper conducted at Rowe's home in Mt. Morris. But the State Police did not get around to forensically examining the computer evidence until 2011, when the statute of limitations for the child pornography offense was about to expire.

Plaintiff Rowe lived in Homer, which is situated in Calhoun County and at a considerable distance from Mt. Morris. When a trooper appeared at his door to arrest him, plaintiff Rowe claimed that he did not own a computer and had no idea what the trooper was talking about. Notwithstanding plaintiff Rowe's protests, he was seized, handcuffed, and confined for the weekend in a jail cell.

On the following Monday, the State Police discovered that they had arrested the wrong man. They returned plaintiff Rowe to Homer, in handcuffs. The Billy Rowe who actually downloaded the child pornography still lived in Mt. Morris. But by the time the police figured out their mistake, the statute of limitations for prosecuting him had run.

-1-

Plaintiff Rowe and his wife, Robin Rowe, (plaintiffs) sued several state police officers, accusing them of gross negligence and several intentional torts. The officers moved for summary disposition on the ground of governmental immunity. The circuit court denied their motion, and one of the three involved officers has appealed. We affirm.

## I. UNDERLYING FACTS AND PROCEEDINGS

In March 2005, Joshua Essex confessed to defendant Michigan State Police Trooper Dennis W. Milburn that Essex's computer harbored child pornography. Essex claimed that his brother, Billy Rowe, had downloaded the pornography. Trooper Milburn and another trooper searched a Flint home that Essex claimed he shared with Rowe and their mother. The troopers seized several hard drives and other computer media for analysis.

That same day in 2005, Trooper Milburn interviewed the suspect, identified in Milburn's report as "Billy Dean Rowe." The report stated that Rowe and his mother lived in an apartment in Mt. Morris, a city located about 10 miles north of Flint. Rowe denied having intentionally downloaded the child pornography. He asserted that the images inadvertently entered his computer through "popups" on legal pornography sites. After Milburn expressed disbelief, Rowe confessed to having downloaded the child pornography. Milburn pressed on, demanding to know whether Rowe had "ever taken pictures of any kids" or "molested any children." Rowe demurred. Milburn did not arrest Rowe. He transported the computer media to a State Police post "for further investigation."

Twenty months later, in November 2006, the State Police discovered that the seized computer equipment had never been analyzed. In December 2006, Milburn delivered the material to the Computer Crime Unit. Four months elapsed. The State Police then determined that no one had ever obtained a search warrant permitting inspection of the computer media. In November 2007, a State Police officer noted that they still had no warrant.

Another year passed. In November 2008, a State Police officer made the following record entry: "Reviewed – Pending Prosecutor's authorization to destroy property." But apparently, neither the prosecutor nor the police decided to revive the dormant case.

Two years and four months flew by. On March 2, 2011, six years after trooper Milburn's acquisition of the computer drives and Rowe's confession, an analyst confirmed the presence of child pornography on the seized media. Defendant Ronald Ainslie, a State Police Detective/Sergeant, took custody of the computer material and, according to defendants, obtained an arrest warrant for "Billy Dean Rowe." Defendants have not produced the arrest warrant, so we do not know what it said, or how it actually identified the wanted man.

Nine more days elapsed. Because the parties have not conducted discovery, we do not know what happened during that interim. How did Ainsle go about locating the "Billy Dean Rowe" who had confessed to Milburn? Did he make any effort to determine whether the suspect who had confessed in Mt. Morris still lived in Mt. Morris? Did he compare the height and weight attributed to the suspect by Milburn with any available information regarding the Billy Dean Rowe who lived in Homer? None of these answers are currently available, because defendants brought their motion before the parties conducted any discovery. We do know that

defendants thought that the statute of limitations for the child pornography charge would expire on March 15, which likely accounts for the renewed interest in the case and the haste with which an arrest was made.

On Friday, March 11, 2011, State Police Detective/Sergeant Ronald Ainslie contacted the State Police post in Battle Creek, presumably because it was the closest post to Homer. Defendant Trooper Steve Lamb, "[w]ith warrant information in hand" (but apparently not the actual warrant), proceeded to Homer where he arrested plaintiff Billy Dean Rowe. Homer is a village (population under 2,000) located approximately 120 miles south and west of Mt. Morris. Plaintiff Billy Dean Rowe lived in Homer with his wife, Robin.

According to plaintiffs' first amended complaint, plaintiff Billy Dean Rowe "begged" Trooper Lamb to verify the arrest information before taking him into custody. Lamb refused. Lamb informed Robin Rowe that her husband would be transported to a jail in Flint. A "distraught" Robin Rowe gathered her husband's cardiac and high blood pressure medications and traveled to Flint. Her husband was not there, however, as Lamb had instead lodged plaintiff Rowe in the Calhoun County Jail. Robin Rowe's repeated requests for information as to her husband's whereabouts went unanswered.

On Monday, March 14, the state police transported plaintiff Rowe to Flint, where Ainslie commenced an interrogation. Plaintiff Rowe claimed he had never been in Flint, insisted that "he had never heard of Mount Morris," had "no idea who Joshua Essex" was, and again denied ownership of a computer. Ainslie's report describes: "He then continued by saying his only brother is Jimmy Rowe and he lives in Homer." Ainslie showed plaintiff Rowe a photo of Essex. Plaintiff Rowe reiterated that he had "no idea who that person is[.]" When Ainslie asked plaintiff Rowe if he had lived in Mt. Morris with his mother during 2005, Rowe replied that his mother had resided in Homer and was deceased. Ainslie noted in his report: "I became a bit concerned at that point and made a trip to Joshua Essex['s] current address in Mount Morris."

Joshua Essex's mother and sister were at home in Mt. Morris. When shown a picture of the Billy Rowe in State Police custody, "both stated they had never seen him before." Their Billy Rowe, the two rejoined, was Billy *Joe* Rowe, and had just driven away. They provided Ainslie with Billy Joe Rowe's telephone number. When Ainslie called, Billy Joe Rowe answered and confirmed having spoken with Trooper Milburn years before.

The State Police then transported plaintiff Billy Dean Rowe to a district court where a judge dismissed the pending charges, although without prejudice. Another trooper drove plaintiff Rowe to his residence in Homer, with his hands cuffed behind his back. Plaintiff Rowe experienced chest pains shortly after his arrival and was admitted to the hospital. Subsequently plaintiff Rowe learned that he had been fired from his job of 15 years for failing to report on March 11. He developed nerve damage in his hand. Adding insult to injury, the Calhoun County jail billed plaintiff Rowe for his stay.

In March 2013, plaintiffs Billy Dean and Robin Rowe filed a complaint naming Ainslie and Lamb as defendants. The complaint set forth claims for "gross negligence," false imprisonment, intentional infliction of emotional distress, and "Michigan Constitutional Claims." In lieu of an answer, defendants filed a motion for summary disposition under MCR 2.116(C)(7)

-3-

and (C)(8). Defendants supported their motion with documents related to the case, including portions of reports authored by Ainslie and Milburn. Notably, the supporting documents do not include any affidavits from the involved troopers, or the arrest warrant. Plaintiffs then filed an amended complaint adding Milburn as a party defendant and restating their allegations with more detail based on defendants' documents. Lamb and Ainslie moved to strike the amended complaint.

The circuit court denied defendants' motions for summary disposition. At a subsequent hearing the circuit court ruled that plaintiffs could not pursue their claims under the Michigan constitution, but declined to strike the balance of their amended complaint. Defendant Ainslie now appeals as of right the trial court's immunity ruling pursuant to MCR 7.202(6)(a)(v).[1]

## II. ANALYSIS

Defendant Ainslie contends that governmental immunity bars plaintiffs' gross negligence and intentional tort claims. Ainslie stresses that he acted in good faith. We agree with the trial court's determination that fact questions preclude summary disposition on immunity grounds.

"We review de novo a circuit court's summary disposition ruling." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). We also review de novo the circuit court's ruling on the availability of governmental immunity. *Norris v City of Lincoln Park Police Officers*, 292 Mich App 574, 578; 808 NW2d 578 (2011). A summary disposition motion brought under subrule (C)(7) "does not test the merits of a claim but rather certain defenses" that may eliminate the need for a trial. *DMI Design & Mfg, Inc v Adac Plastics, Inc*, 165 Mich App 205, 208; 418 NW2d 386 (1987). Under this subrule, summary disposition may be granted when "a claim is barred because of immunity granted by law." *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010).

When reviewing a grant of summary disposition under subrule (C)(7), this Court accepts as true the plaintiff's well-pleaded allegations and construes them in the light most favorable to the plaintiff. *Id.* at 428. Our review under subrule (C)(7) encompasses affidavits, depositions, admissions, or other documentary evidence submitted on behalf of the moving party. *Id.* at 429. "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts," whether immunity bars the claim is a question of law for the court. *Id.*

### A. The Procedural Posture of This Case

We highlight that defendants filed their motion for summary disposition before any discovery had been obtained, because this fact figures prominently in our analysis. Defendants filed with the circuit court several police reports which, in defendants' estimation, supported

---

[1] Under MCR 7.202(6)(a)(v), the circuit court's denial of defendants' motion for summary disposition qualifies as a "final order," because it was "an order denying governmental immunity to a governmental party" brought under MCR 2.116(C)(7). Defendants have not claimed an appeal regarding Trooper Milburn or Trooper Lamb.

their summary disposition claim. We find that these documents create more fact questions than answers. The reports include several different physical descriptions of "Billy Dean Rowe." The birth dates of both the true suspect and plaintiff Rowe have been redacted. As we have pointed out, a critical piece of evidence—the arrest warrant and any supporting documentation—has yet to emerge. While we have accepted the reports as substantively admissible evidence that may be considered under MCR 2.116(G)(6), Trooper Ainslie failed to file an affidavit describing his actions and explaining why they qualified as having been made in good faith.

According to plaintiffs' response to defendants' summary disposition motion, the Rowes' sought information under the Freedom of Information Act, MCL 15.231 *et seq.*, before filing this lawsuit. The information requested included copies of the in-car videos obtained during plaintiff Rowe's transports, any audiotapes related to his arrest, and "[a]ny logs" detailing "the activities related to this incident." Defendants responded by producing a single sheet of paper indicating that as of April 21, 2007, the state police could not locate a search warrant for the computer material and that "Computer Crimes Unit needs one to conduct their investigation." Defendants provided plaintiffs with a somewhat fuller account of the circumstances surrounding plaintiff Rowe's arrest, jailing and interrogation only as exhibits in support of their summary disposition motion.

Thus, the factual record in this case is poorly developed. Discovery likely to shed light on material questions of fact has yet to be accomplished. Accordingly, the circuit court did not err in concluding that absent additional evidence fleshing out the circumstances of plaintiff Rowe's arrest, summary disposition would be premature. *Dep't of Social Servs v Aetna Cas & Surety Co*, 177 Mich App 440, 446; 443 NW2d 420 (1989). Nevertheless, we address defendants' legal arguments.

## B. The Intentional Tort Claims

Plaintiffs' first amended complaint sets forth two intentional tort claims: false imprisonment and intentional infliction of emotional distress. To establish his immunity from these allegations, Ainslie bears the burden of demonstrating that:

> (a) The acts were undertaken during the course of employment and that [he] acted, or reasonably believed that he was acting, within the scope of his authority,
>
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (c) the acts were discretionary, as opposed to ministerial. [*Odom v Wayne Co*, 482 Mich 459, 479-480; 760 NW2d 217 (2008)].

Ainslie asserts that his acts qualify as purely ministerial, and manifested good faith.

*Odom* instructs that discretionary acts "require personal deliberation, decision and judgment." *Id*. at 476 (quotation marks and citation omitted). In reopening and pursuing the child pornography case against "Billy Rowe," Ainslie exercised his discretion. Ainslie obtained an arrest warrant, another discretionary act, and apparently supplied the information contained in

the warrant, including the identity of the wanted suspect. Ainslie also apparently identified plaintiff Rowe as the individual to be placed under arrest. These actions required "deliberation, decision and judgment," placing them squarely within the realm of discretionary decisions.

Further, the record evidence leaves unresolved whether Ainslie acted in good faith. In *Odom*, the Supreme Court highlighted the attributes of conduct consistent with a *lack* of good faith. "[T]here is no immunity when the governmental employee acts *maliciously* or with a *wanton or reckless disregard of the rights of another.*" *Id.* at 474 (emphasis in original). The model civil jury instructions provide a "useful guide" for considering whether an official acted without malice. *Id.* at 475. M Civ JI 14.12 defines "willful misconduct" as "conduct or a failure to act that was intended to harm the plaintiff," while M Civ JI 14.11 describes "wanton misconduct" as "conduct or a failure to act that shows such indifference to whether harm will result as to be equal to a willingness that harm will result." *Odom*, 482 Mich at 475.

The circuit court correctly determined that questions of fact preclude a ruling that Ainslie acted in good faith. Viewed in the light most favorable to plaintiffs, the evidence (provided almost entirely by defendants) supports an inference that due to the looming limitations date, Ainslie was in a hurry to make an arrest. Additional evidence substantiates that significant and obvious differences existed between the Billy Dean Rowe who was arrested, and the "Billy Dean Rowe" interviewed by Milburn. Most notably, the former lived in Homer, while the latter resided in Mt. Morris. The true suspect, Billy *Joe* Rowe, was later described in State Police documents as being 6 feet tall and weighing 200 pounds. Plaintiff Billy Dean Rowe is 5 feet 4 inches in height, and weighs 185 pounds. We do not know the ages of either; a substantial difference might constitute yet another fact that potentially should have alerted Ainslie that verifying the suspect's true identity was required before he sought a warrant. Similarly, if the police had a "mug shot" of their true suspect, additional differences may have emerged. Nor do we know if Ainslie ever spoke with Milburn about the suspect. The "good faith" standard is subjective. *Latits v Phillips*, 298 Mich App 109, 116; 826 NW2d 190 (2012). Here, neither an affidavit nor deposition testimony elucidates Ainslie's thinking.

These evidentiary holes justified the circuit court in denying Ainslie's summary disposition motion. Based on the evidence submitted to date, material questions of fact exist regarding whether Ainslie conducted his investigation of the suspect's identity and whereabouts in a manner reflecting indifference to whether harm would result to an innocent person.

## C. Gross Negligence

Similar logic guides our conclusion that Ainslie failed to demonstrate his entitlement to immunity for plaintiffs' gross negligence claims.

MCL 691.1407(7)(a) defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Odom* tells us to analyze gross negligence claims by determining whether:

> (a) the individual was acting or reasonably believed that he was acting within the scope of his authority,

(b) the governmental agency was engaged in the exercise or discharge of a governmental function, and

(c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage. [*Odom*, 482 Mich at 479-480.]

The parties dispute only the question of whether Ainslie's actions qualify as grossly negligent.

Reasonable minds could differ as to whether Ainslie recklessly obtained a warrant for plaintiff Rowe's arrest despite that he lived in Homer rather than Mt. Morris, and did not physically resemble the actual suspect. Whether gross negligence exists is a fact-intensive inquiry. When fleshed out, the facts may well support that Ainslie acted with due concern for others, including plaintiff Rowe. Given the available evidence and plaintiffs' allegations, it is too early to make that call.

Lastly, Ainslie contends that plaintiffs have not set forth a cognizable cause of action by pleading "gross negligence." Ainslie correctly cites *Beaudrie v Henderson*, 465 Mich 124, 139 n 12; 631 NW2d 308 (2001), for the proposition that MCL 691.1407 does not create a cause of action, and that "[p]laintiffs are still required to establish a common-law duty." Plaintiffs' complaint alleges among other things that defendants failed to "properly identify a subject before issuing an arrest warrant," "provide care to Mr. Rowe while in custody," and "release Mr. Rowe once innocence was established." The pleaded actions and inactions implicate common-law duties of care.

We affirm.


/s/ Peter D. O'Connell
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher

-7-