GRIFFIN, Circuit Judge,
concurring in part and dissenting in part.
David Marshall refused multiple orders to surrender his revolver during an early morning argument with Farmington Hills Police Officers Michael Meister and James Jarrett. When Meister and Jarrett approached him, Marshall reached for the firearm, placing the officers in fear for their safety. Defendants reacted accordingly—they tased Marshall and secured his weapon.
My colleagues and I agree, for the most part, that Jarrett and Meister were in the right; it was Marshall, not Meister, who prolonged the traffic stop; it was Marshall’s behavior in refusing to disarm, and in touching his weapon, that justified defendants’ decisions to tase and arrest him; and it was Marshall who failed to establish that defendants had any reason to believe *430 that a proper arrest could implicate his First Amendment rights. However, I part ways with the majority when it comes to plaintiffs assault and battery claim, for there, the court discounts his responsibility. It was Marshall who acknowledged that he “placed his hand on his service weapon” after repeatedly telling defendants he did not intend to surrender it. He cannot now claim that defendants should have known he “was simply protecting” the firearm rather than preparing to use it. More importantly, Michigan law does not require Jarrett and Meister to make that assumption at the expense of their safety.
Because no Michigan jury could conclude that defendants’ objectively reasonable use of force amounts to malice, wantonness, or a reckless disregard for the common dictates of humanity, I conclude the district court properly granted summary judgment in favor of defendants on plaintiffs assault and battery claim. Odom v. Wayne Cty., 482 Mich. 459, 760 N.W.2d 217, 225 (2008). I therefore respectfully dissent from Section VII of the opinion. I join the majority’s opinion in all other respects.
I.
Governmental immunity for intentional torts under Michigan law is distinct from federal qualified immunity. For purposes of Marshall’s excessive force claim under federal law, “the ‘reasonableness’ inquiry ... is an objective one: the question is whether the officers’ actions are ‘objectively reasonable’ in light of the facts and circumstances confronting them, without regard to their underlying intent and motivation.” Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). But underlying intent and motivation are relevant to Michigan’s doctrine of governmental immunity:
In Odom v. Wayne County, the Michigan Supreme Court stated that the proper method for determining whether governmental immunity applies to intentional torts, such as assault and battery, is to apply the test set forth in Ross v. Consumers Power Co. Under the Ross test, an employee enjoys a right to immunity if (1) the employee undertook the challenged acts during the course of his employment and was acting, or reasonably believed that he was acting, within the scope of his authority; (2) the employee undertook the challenged acts in good faith or without malice; and (3) the acts were discretionary, rather than ministerial, in nature.
[[Image here]]
Unlike qualified immunity under federal law, which uses an objective standard, “[t]he good-faith element of the Ross test is subjective in nature. It protects a defendant’s honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent.” Therefore, “[t]he proponent of individual immunity must establish that he acted without malice.”
Bletz v. Cribble, 641 F.3d 743, 757 (6th Cir. 2011) (citations omitted). These different standards purport to explain the majority’s contradictory holding: on the one hand, it concludes that defendants are not liable for excessive force because Jarrett had an “objectively reasonable basis” to tase Marshall, But on the other, it finds that defendants may be hable for assault and battery under Michigan law based on evidence of “subjective” “bad faith.”
Although differences in these tests theoretically permit such a result, the facts of this case do not warrant it. In fact, the facts of most cases do not warrant it. Claims of excessive force under the Fourth Amendment and assault and bat *431 tery under Michigan law are largely uniform in outcome; a plaintiff who fails to establish one almost necessarily fails to establish the other. See, e.g., Latits v. Phillips, 298 Mich.App. 109, 826 N.W.2d 190, 195-96 (2012) (per curiam) (observing that if, under federal precedent, the defendant officer’s conduct would not amount to excessive force, “then the circumstances surrounding defendant’s decision to shoot Latits do not establish malice on behalf of defendant”); VanVorous v. Burmeister, 262 Mich.App. 467, 687 N.W.2d 132, 141-42 (2004) (plaintiffs assault and battery claim foreclosed by a prior court finding that officers’ did not use excessive force) overruled on other grounds by Odom, 760 N.W.2d at 220 n.8; cf. Alexander v. Riccinto, 192 Mich.App. 65, 481 N.W.2d 6, 8-10 (1991) (per curiam) (finding a genuine issue of material fact on plaintiffs assault and battery and federal excessive force claims).
And even where the two claims are resolved differently, courts usually grant immunity to Michigan assault and battery claims over the federal excessive force claims because Michigan law affords officers greater protection than federal law. See, e.g., Bletz, 641 F.3d at 754, 757-58. An officer who is mistaken about the proper level of force necessary to subdue an ar-restee risks losing qualified immunity if “a reasonable person in the officer’s position would know that the conduct complained of was unlawful.” Id. at 750. But if that same officer can “show that he had a good-faith belief that he was acting properly in using ... force, he is entitled to the protections of governmental immunity regardless of whether he was correct in that belief.” Latits, 826 N.W.2d at 194; see also Odom, 760 N.W.2d at 229 (“A police officer would be entitled to immunity ... if he acted in good faith and honestly believed he had probable cause to arrest, even if he later learned that he was mistaken.” (footnote omitted)).
Ultimately, however, this case has more to do with what Michigan courts and federal courts have in common. Each forum may assess officer immunity through a different lens, but both agree that “[pjolice officers are not required to take unnecessary risks in the performance of their duties,” particularly in conducting traffic stops. Norris v. Lincoln Park Police Officers, 292 Mich.App. 574, 808 N.W.2d 578, 579 (2011) (per curiam); see also Pennsylvania v. Mimms, 434 U.S. 106, 110, 98 S.Ct 330, 54 L.Ed.2d 331 (1977). Jarrett and Meister have the right to use the degree of force reasonably necessary to make an arrest and to protect themselves in the course of that arrest. Delude v. Raasakka, 391 Mich. 296, 215 N.W.2d 685, 689 (1974); see also Livermore ex rel Rohm v. Lubelan, 476 F.3d 397, 405 (6th Cir. 2007). And because police officers are forced to make “split-second judgments” in conditions that are tense, uncertain, and rapidly evolving, we judge the reasonableness of that force “from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.” Livemore, 476 F.3d at 405 (citation omitted). “When addressing a claim of assault and battery that allegedly occurred during the making of an arrest,” Michigan judges do the same. See Norris, 808 N.W.2d at 579-80 (“In light of the unusual and extraordinary nature of police work, it is improper to second-guess the exercise of a police officer’s discretionary professional duty with the benefit of 20/20 hindsight.”).
But second guess Jarrett and Meister is just what the majority does. It reasons that defendants may have had “no fear” that plaintiff would use his firearm because “Marshall never drew his weapon” at them, and placed his hand on it only “after Jarrett approached him with the *432 Taser while Meister and Jarrett sought to take control of Marshall’s service revolver.” There are at least two problems with this finding. First, my colleagues have already said the officers “could reasonably believe that the presence of a weapon,” even if not drawn, “posed a threat to [their] safety.” And they are right. No rule of Michigan law requires defendants to wait for the plaintiff to draw his weapon before deciding to act. To the contrary, “[p]olice officers are not required to take unnecessary risks in the performance of their duties.” Id. at 579. Nor did Meister and Jarrett have any reason to believe that Marshall “was simply protecting” the firearm. Plaintiff already refused his opportunity to “protect[]” the weapon when he ignored Meister’s orders to leave the gun in his car. “In light of the unusual and extraordinary nature of police work,” Jarrett and Meister were entitled to err on the side of caution. Id. at 580.
Second, noting that Marshall touched his gun only “after Jarrett approached him with the Taser” implies that plaintiff was somehow justified in reaching for his weapon in response to Jarrett’s approach. He was not. And the majority tells us so in resolving plaintiffs excessive force claim. It finds “Marshall refused Meister’s repeated demands that he disarm himself’ and, in so doing, violated the prohibition against resisting a police officer and interfering with his duties. Unable to secure a weapon they reasonably believed posed a threat of harm to themselves and perhaps even to Marshall, defendants were justified in retrieving the taser and approaching Marshall with it in hand. Once Marshall “placed his hand on his service weapon” in response to Jarrett’s approach, Jarrett had “an objectively reasonable basis” to deploy the taser. As the majority agrees, “Defendants’ use of force was objectively reasonable.”
The only other evidence of bad faith the majority cites is its belief that a reasonable jury could “conclude that Meister maliciously threatened to issue Marshall a ticket in retaliation for requesting a supervisor.” I disagree. A jury would have no occasion to consider whether Meister “maliciously threatened to issue Marshall a ticket” because that is not at issue. Marshall did not bring a claim for malicious prosecution, and the majority itself concludes defendants had probable cause to arrest Marshall. Nor could a jury consider any alleged “retaliation.” We have found Jarrett and Meister enjoy qualified immunity in the face plaintiffs claim that they retaliated against him for exercising his First Amendment right to request a supervisor, so that question would never be put to a fact finder.
The question instead is whether, in exercising objectively reasonable force, Meister and Jarrett maliciously intended to assault and batter Marshall—i.e., to tase him with “an intent to [cause] harm.” Odom, 760 N.W.2d at 225. It is true that under this subjective test, the fact that an officer’s actions are legally justified is not always determinative of the outcome; but that fact is always relevant. See id. at 229 (“The mere existence of probable cause [to arrest and prosecute], is not the proper inquiry,” “ty]et the existence of probable cause is relevant to the analysis; a claim of false arrest or false imprisonment cannot be sustained if the arrest was legal.”). As Judge White has said, “evidence useful to determine objective reasonableness can also serve to evaluate good faith.” Scozzari v. Miedzianowski, 454 Fed.Appx. 455, 467 (6th Cir. 2012).
And here, that evidence—namely, Marshall’s touching of his firearm—tips the balance in favor of defendants. It is clear even from the majority opinion that defendant’s emotional response immediately be *433 fore the tasing is focused on Marshall’s refusal to disarm: “Meister loudly said, Tut your gun down. THAT DOES IT.’ Marshall again asserted ... ‘you have no reason to touch me’ while Meister repeated Tut your gun on the car.’ Marshall continued “You have no reason to touch me. I’m not putting-my gun on my car. Don’t touch me. Wait for your supervisor to get here.’ ” Meister’s reaction after Jarrett applies the taser confirms this finding: “I got his gun.”
Plaintiff himself made the connection between his weapon and the tasing when he spoke to officer Soderlund immediately after his arrest:
[W]hat happened was your officer pulled me over for a traffic stop. I pulled over to the house, I’m off duty .., he’s yelling at me who are you somebody special. I say, I’m sorry, I’m off duty. He’s telling me get out of the car.... I get out of the car, show him' my ID and my driver’s license, and he’s pushing and grabbing on me to come back to his car. No, I’m not coming back to your car. Write me a ticket if you’re going to write me a ticket ... get your supervisor ... you’re pulling me over for a traffic stop, what is your probable cause for getting me out of my car? He has none.... I gave him 1 my identification'. ... He starts grabbing on me and trying to force me into his car ... The other guy shows Up and also puts his hands on me. Then he reaches for, telling me to give up my'gun .... you have no reason therefore he gets his boy. Boy comes out, pulls his taser out. I put my hand on my weapon, you’re not going to-taser me. You have no reason, you’re unjustified. I’m advising him of that, I didn’t pull my weapon out, I was advising him, protecting myself. They both grab me, one of them guys tasers me and takes my weapon, What is the probable cause?
(Emphasis added.).‘You put your hand on your weapon,” responded Soderlund. “[T]hat’s why you were tased.” By- Marshall’s own on-the-scene account, defendants resorted to the taser in response to his unwillingness to. give up his firearm and used it only after Marshall “put [his] hand on [his] weapon.”
The majority wholly discounts Marshall’s refusal to obey Meister’s lawful order to forfeit his handgun, claiming a jury could conclude defendants tased him in response to his request for Meister to call a supervisor. But Meister did calk his supervisor, much earlier in the parties’ interactions before Jarrett (the officer who actually tased Marshall) even arrived oh the scene. Meister’s tone may well demonstrate frustration with Marshall. But that fact, in my view, did not turn an objectively harmful situation into one whereby defendants acted maliciously. See Oliver v. Smith, 290 Mich.App. 678, 810 N.W.2d 57, 63-64 (2010) (per curiam) (officer’s laughter did not demonstrate bad faith given plaintiffs “unruly” behavior in “disturbing a police inquiry and creating a dangerous situation for the officers involved”). It was Marshall’s behavior in refusing to disarm, and in touching his weapon during a tense confrontation with police, that justified defendants’ decisions to use force against him.
II.
“Police officers must work in unusual circumstances. They deserve unusual protection,” White v. Beasley, 453 Mich. 308, 552 N.W.2d 1, 5 (1996); see also Norris, 808 N.W.2d at 579-80. Before reaching plaintiffs state law claims, we have said that Jarrett and Meister acted lawfully under the Fourth and First Amendments, had reason to believe they acted lawfully, and had reason to fear for their safety. Yet *434 the majority concludes that a jury could find'defendants acted in bad faith and with an intent to punish Marshall when they tased him. This outcome is not supported by logic, to say nothing of Michigan law. No reasonable Michigan jury could conclude that officers who acted with objectively justified force nevertheless engaged in malicious or wanton conduct or demonstrated a reckless indifference to the common dictates of humanity. Odom, 760 N.W.2d at 225. Accordingly, I would affirm the district court’s grant of summary judgment on plaintiffs assault and battery claim in favor of defendants. I therefore respectfully dissent from Section VII of the opinion.