# STATE OF MICHIGAN

# COURT OF APPEALS

ARTHUR CHAPMAN,

       Plaintiff-Appellee,

v

OFFICER D. MACK,

       Defendant-Appellant.

UNPUBLISHED
June 19, 2018

No. 335678
Wayne Circuit Court
LC No. 15-010270-NO

Before: BORRELLO, P.J., and SHAPIRO and TUKEL, JJ.

SHAPIRO, J. (*dissenting*).

I respectfully dissent and would affirm.

Defendant officer arrested plaintiff although plaintiff had committed no crime. The officer had no lawful basis for the arrest and justified it by making statements in the police report that he now admits were untrue. Plaintiff, who had no criminal record, was held at gunpoint, briefly jailed, and charged with a misdemeanor. Later, his innocence was demonstrated by a videotape of the events taken by a disinterested witness and the charge was dismissed.

The existence of the videotape was providential. But for its existence, and the persistence of the person who recorded it, the charge against plaintiff would not have been dismissed. He would likely have been subject to a trial at which the false statements in defendant's report, serving as his "recorded recollections" would have been presented to the jury as the sworn testimony of a police officer.

## FACTS

Plaintiff was driving on eastbound I-94 and complying with all traffic laws. His car had a personalized license plate that read: SHAKAZ. Some other car, one that superficially resembled plaintiff's, was speeding down the same highway, cutting in and out of lanes, and driving on the shoulders. Defendant officer was sitting in his patrol car facing west, i.e. facing eastbound traffic. He saw the speeding vehicle, but was unable to read its license plate number. He had to turn his patrol car around and enter the highway before he could begin to chase the speeder. Given that the speeder was traveling at speeds of 90-100 mph, the speeder was well out of sight by the time the defendant entered the highway and began to give chase. Defendant never again saw the speeding vehicle, and it is speculated that the speeder left the highway at an intervening

1

exit. About 5 miles down the highway, the officer sighted plaintiff's car which was travelling well within the speed limit and complying with all traffic laws. Plaintiff's car was a black 2010 Dodge Challenger with two large white stripes across the hood, a chrome gas cap and chrome wheels. The speeding car was identified by the person who shot the video as a dark 2015 Dodge Charger[1] and the video clearly shows that it did not have white stripes across the hood, had dark rather than chrome wheels and had a different tail light arrangement. Based solely on the fact that the two cars bore a superficial resemblance, the officer stopped plaintiff's car, approached it with gun drawn, and pointed at plaintiff. Plaintiff, repeatedly told the officer that he "had the wrong guy." The officer arrested plaintiff, handcuffed him,[2] took him to jail, and filed the charge against him.[3]

By chance, another driver had seen the speeder and was taping it on his dash cam. According to the video, the speeding car passed the witness's car 17 seconds before the patrol car did which given the speeds involved indicates that the police car was about one-half mile behind the speeding car at that moment. The dash cam also briefly captures the scene on the side of the road a few minutes later where defendant pulled plaintiff over. It is undisputed that the video demonstrates plaintiff's car was not the speeder.

ANALYSIS

Defendant argues that he made a good faith error in arresting plaintiff. Whether his actions were in good faith is clearly a question of fact.[4] If the only evidence was that defendant pulled over the wrong car, his claims of having made an "honest mistake" might be sufficient to justify summary disposition. But that is far from the case. The officer took several actions thereafter that clearly demonstrate guilty knowledge. *Bellinger v Kram*, 319 Mich App 653, 661; 904 NW2d 870 (2017). To begin with, defendant falsified his report. He included false evidence indicating guilt and omitted exculpatory information. First, he stated in the report that immediately after the speeder went by him, "I pulled out after the suspect vehicle and observed it

---

[1] When defendant was shown the video during the department's internal investigation, he admitted that the speeding car in the video was a Dodge Charger, not a Challenger.

[2] The handcuffs were placed so tight that plaintiff had to seek medical treatment for numbness in his hands that lasted several days. In addition, due to the trauma of being held at gunpoint and falsely arrested, jailed and charged, plaintiff was treated at Henry Ford Behavioral Clinic where he was diagnosed with post-traumatic stress syndrome, generalized anxiety, and depression.

[3] Defendant also told plaintiff that if plaintiff had traveled another 50 feet before pulling over, he would have been charged with felony fleeing and eluding.

[4] A court considering a motion under MCR 2.118(c)(10) "must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Joseph*, 491 Mich at 206. All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010).

to be a Dodge Challenger with a personalized license plate SHAKAZ." Obviously, defendant did not see the license plate reading SHAKAZ on the speeding vehicle since it was never on the speeding vehicle;[5] he only saw that license plate after he pulled plaintiff over. Second, the officer omitted from his report any indication that he lost sight of the speeding vehicle at all, let alone for 5 miles. Instead the report is written so as to clearly suggest that the speeding car remained in his sight throughout by describing its movements of cutting through traffic and speeding after his initial sighting.[6] Third, defendant also falsely claimed in the report that plaintiff admitted to driving on the shoulder when plaintiff had not driven on the shoulder, and testified that he never admitted to such conduct.

The grounds for finding bad faith were strengthened by the officer's subsequent actions also consistent with guilty knowledge. Two days after plaintiff's arrest, the witness who took the videotape called the police department and spoke personally with defendant officer. The witness told defendant that he believed the officer had arrested the wrong person and that he had a video that would exonerate the man arrested. Defendant told the witness that he had arrested the right person and that he was not interested in seeing the video. Notably, defendant did not supplement his police report to describe the phone call or include the name and contact information of this witness.

It is not difficult to imagine what would have happened had the witness not come forward and persisted. Plaintiff would have been charged and likely convicted based on the officer's false "recorded recollections" in his report. The conviction could have cost plaintiff his job,[7] put his driver's license in jeopardy, and required him forever thereafter, to report his arrest and conviction when applying for work, housing, and other requirements of life. None of this seemed to concern defendant when he glibly refused to view a few-minutes videotape that a neutral witness told him would show he had arrested the wrong man.[8]

---

[5] When the department conducted an investigation, defendant admitted that when the speeder went by him, he only saw the "back of the car and dust," and that he did not see the plate.

[6] When confronted by his superior during the investigation, defendant admitted that when the speeding car went by him, he had to wait a short while before pulling out, that he lost sight of the speeding car, and that he chose not to include this fact in his report.

[7] Plaintiff testified that because he is a licensed casino employee, he is obligated to report any arrests to his employer.

[8] After defendant refused to watch the videotape, the witness called his supervising sergeant who also refused the offer of the videotape. The internal investigation report states that the sergeant told the caller to contact a different office in the department, but did not forward the call or provide the number. The internal investigation report noted that "the [sergeant] and the other officers decided not to talk to Mack about issues due to recent frequency of calls with him and they are just advising citizens with complaints to file a complaint and forward to chief's office." Discovery into those frequent complaints may be relevant to whether defendant made an honest mistake or had a pattern and practice of improper conduct of the type alleged here. MRE 404(b).

Moreover, if the defendant actually believed that he had probable cause to stop and arrest defendant, why did he think it necessary to "supplement" his police report with false evidence to justify the stop? A reasonable jury could readily infer that defendant falsified his report because he *knew* that the actual evidence he possessed at the time of the arrest was not sufficient to establish probable cause. If he honestly believed that he had probable cause, there would have been no need to repeatedly lie in his report in order to invent grounds for probable cause. Thus, a jury could readily conclude that defendant acted in bad faith, i.e., that he willfully arrested plaintiff despite his subjective knowledge that he lacked probable cause to do so, and that he did so with "indifference to whether harm will result." *Odom v Wayne Co*, 482 Mich 459, 475; 760 NW2d 217 (2008).

The majority's reliance on *Latits v Phillips*, 298 Mich App 109; 826 NW2d 190 (2012), is unavailing. In that case, the plaintiff's decedent was stopped for a traffic violation. *Id*. at 111. It was not disputed that the stop was lawful. *Id.* During the stop, an officer saw a bag of marijuana, and asked the driver to get out of the car. *Id*. Rather than doing so, the driver hit the gas and drove off. Four police cars gave chase and the driver rammed one of the police cars. *Id*. at 111-112. When the vehicle stopped, an officer approached it with his gun drawn. *Id*. at 112. The driver then put the car into reverse and began to drive in the direction of the officer and other officers. *Id*. The officer fired and the driver was hit and killed. *Id*.

The only question in *Latits* was whether the decision to use deadly force had been taken in good faith. The Court noted that the officer took such action "to ensure his safety and the safety of others," that the driver had already attempted to injure officers by ramming the police car, and that he believed that he or others were going to be injured. *Lattis*, 298 Mich App at 116. This was confirmed by the testimony of other officers, and plaintiff had no evidence to the contrary. *Id*. By contrast, in this case, there is substantial evidence that at the time of the arrest, the officer knew that he lacked probable cause and that at best he was guessing that plaintiff was the speeder. He knew that he had lost sight of the speeder, that he had never seen its license plate, and that once he noticed plaintiff's car it was not being driven improperly. This is more than sufficient for a jury to reasonably conclude that the officer's conduct was in bad faith or, if considered in the context of gross negligence, "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).[9]

---

[9] Plaintiff's complaint includes a gross negligence count but the majority does not address the merits of that claim. It seems to conclude that because that claim is based on the same facts as the intentional tort claim it is really an intentional tort claim, overlooking the principle that one set of facts may give rise to more than one cause of action and a party may plead in the alternative. See MCR 2.111(A)(2) (a party may plead alternate theories of liability); *Frieburger v Dep't of Mental Health*, 161 Mich App 316, 319-320; 409 NW2d 821 (1987) (a given set of facts may give rise to more than one cause of action, such that it would be improper to summarily dismiss one claim merely because it relies upon the same set of facts as another claim). Moreover, any error in the pleading could readily be corrected by permitting plaintiff to amend his complaint consistent with MCR 2.116(I)(5).

4

An officer's self-serving assertion of good faith is not grounds to grant summary disposition in his favor where there is evidence to contradict that assertion. Where there is a question of fact, the dispute is to be resolved by the jury. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Accordingly, I would affirm and remand for trial.

/s/ Douglas B. Shapiro