TIG INSURANCE COMPANY,
et al., Respondents,

v.

Christopher W. ANDERSON,
et al., Appellants.

No. C5–02–1413.

Court of Appeals of Minnesota.

March 11, 2003.

Mathew M. Meyer, Moss Barnett, P.A., Minneapolis, MN, for respondents.

James B. Wallace, Robert D. Tiffany, Park Rapids, MN, for appellants.

Considered and decided by HUDSON, Presiding Judge, SCHUMACHER, Judge, and HALBROOKS, Judge.

## OPINION

SCHUMACHER, Judge.

Appellants Christopher W. Anderson, Warren Anderson, and Linda P. Anderson argue the district court erred in granting the motions for partial summary judgment of respondents TIG Insurance Company and GenRoe, Inc., d/b/a Complete Title Service of Walker & Park Rapids, and awarding attorney fees. We affirm.

## FACTS

In early 1992, W. Anderson assisted his son, C. Anderson, in purchasing property from Julia R. Turner in Cass County near the Northern Lights Casino for the purpose of opening a restaurant. Turner required that the purchase be by way of a contract for deed and that W. Anderson sign as a purchaser on the contract. On March 31, 1992, a contract for deed was executed conveying the property to W. Anderson.

C. Anderson and W. Anderson constructed a restaurant on the property. C. Anderson obtained a loan from First National Bank of Walker (Walker Bank) and W. Anderson co-signed as additional obligor. The loan was to finance the construction of the restaurant, and upon completion of the construction, the loan was to be refinanced. C. Anderson and W. Anderson signed a promissory note for $57,000 in favor of Walker Bank and simultaneously gave Walker Bank a mortgage in that amount as security for the loan. The mortgage was duly registered and recorded.

At that same time, L. Anderson and W. Anderson conveyed an undivided 1/2 interest in the property to C. Anderson and retained the other 1/2 undivided interest jointly as husband and wife. In June 1993, C. Anderson purchased fire insurance on the restaurant from Secura Insurance Company, listing himself and "C W Burger" (the name of the restaurant) as the insured(s) and listing Walker Bank as the mortgagee. W. Anderson was not listed as an insured on the policy.

On March 7, 1994, a fire destroyed the restaurant. The investigation of the fire

resulted in criminal arson charges being brought against C. Anderson. He agreed to enter an Alford plea to the charge of "negligent fire" in exchange for dismissal of other charges. Prior to this time, Secura paid Walker Bank the amount of its mortgage, $58,696.22, in exchange for assignment of the mortgage and promissory note of the Andersons per the standard mortgage clause set forth in the insurance policy. Walker Bank sent a letter to C. Anderson and W. Anderson at W. Anderson's address, stating that Secura had paid the full amount of the mortgage in exchange for the assignment.

C. Anderson commenced a lawsuit against Secura, seeking a declaratory judgment that the fire damage was covered under the policy and claiming a breach of the insurance contract. W. Anderson did not join in the lawsuit. Secura alleged that no coverage was owed to C. Anderson due to an exclusion in the policy for damage caused by the "dishonest or criminal acts" of the insured. After a court trial, the district court issued judgment against C. Anderson, finding that the fire and property loss were caused by the "dishonest or criminal acts" of C. Anderson and he was therefore not owed coverage.

While C. Anderson's lawsuit was still pending, he placed the property on the market. A company called JDOB, Inc. purchased the property. GenRoe was retained to perform a title search in connection with the purchase. GenRoe failed to discover the mortgage listing Walker Bank as mortgagee. The closing on the property occurred on August 16, 1996. Several documents were executed. Turner, still holding the contract for deed, executed a warranty deed conveying an undivided 1/2 interest to C. Anderson and the same to W. Anderson. L. Anderson, C. Anderson, and W. Anderson executed a warranty

deed in favor of JDOB, conveying the property pursuant to the purchase agreement. Some of the proceeds from the sale were used to pay off the remainder of Turner's contract for deed. The Andersons did not reveal the existence of the mortgage. JDOB thereafter transferred the property to Centennial Bank.

Upon learning of the sale of the property, Secura sought to foreclose on the mortgage. In response to Secura's demand on the mortgage, GenRoe's failure to discover the mortgage was revealed. GenRoe tendered the claim to its errors and omissions carrier, respondent TIG. Eventually, TIG and GenRoe settled with Secura and Centennial Bank by paying $45,000 and taking an assignment of the note and mortgage from Secura as well as an assignment of Centennial Bank's claim against the Andersons for breach of covenant against encumbrances.

The district court granted TIG and GenRoe's motions for summary judgment against C. Anderson and W. Anderson jointly and severally on the breach of contract claim and awarded $52,137.41, plus interest and attorney fees. The court also awarded judgment in the amount of $45,000 against L. Anderson, C. Anderson, and W. Anderson on the breach of warranty against encumbrances. The Andersons appeal from the judgment.

## ISSUES

1. Did the district court err in concluding that TIG and GenRoe were entitled to judgment against W. Anderson and C. Anderson for the full value of the promissory note?

2. Did the district court err in concluding that TIG's and GenRoe's enforcement of the promissory note was not barred as an unasserted compulsory counterclaim in C. Anderson's lawsuit against Secura?

3. Did the district court abuse its discretion in awarding attorney fees?

## ANALYSIS

■ 1. The district court's decision with respect to TIG's and GenRoe's ability to recover on the promissory note and the extent of that recovery is a legal determination, which this court reviews de novo. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). If the district court grants summary judgment based on the application of the law when no material facts are in dispute, the result is a legal determination to which this court owes no deference. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998).

The Andersons argue that TIG's and GenRoe's lawsuit is a subrogation claim and accordingly is subject to the limitations attendant to subrogation claims. TIG and GenRoe argue that their claims are contractual in nature, based on the assignments of the note and mortgage. The district court found that TIG and GenRoe could recover the full amount under the note from W. Anderson and C. Anderson, the co-obligors on the note, because TIG and GenRoe had taken a valid assignment of the note.

■ We agree with the district court's analysis. Secura took a valid assignment of Walker Bank's mortgage and promissory note when it paid Walker Bank under the standard mortgage clause. The Secura policy language conforms to the Minnesota Standard Fire Insurance Policy, which was enacted by the legislature to establish policy language requirements to protect the public from "ingeniously worded" conditions and exclusions designed to afford less protection than would be reasonably expected. *Watson v. United Servs. Auto. Assoc.*, 566 N.W.2d 683, 690 (Minn.1997) (quotation omitted).

[W]henever this company shall be liable to a mortgagee or vendor for any sum for loss under this policy * * * this company shall elect by itself, or with others, to pay the mortgagee or vendor the full amount secured by such mortgage or contract for deed, then the mortgagee or vendor shall assign and transfer to the company the mortgagee's or vendor's interest, upon such payment, in the said mortgage or contract for deed together with the note and debts thereby secured.

Minn.Stat. § 65A.01, subd. 3 (2002).

Accordingly, the Secura policy language conforms to the statute:

If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

\* \* \* \*

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

This policy language creates a contractual right to assume any and all benefits flowing from the assigned note and mortgage. The legislature has explicitly authorized and validated assignments such as Secura's under Minn.Stat. § 65A.01, subd. 3. The Andersons' argument that Secura had only a subrogation claim is without merit.

W. Anderson argues that he is an "innocent insured" and not subject to Secura's "subrogation" claim. He asserts that he had an insurable interest in the realty at the time of loss, and therefore he should occupy a "co-insured" status under C. Anderson's policy with Secura. As a co-insured, and an innocent insured, W. Anderson argues that a subrogation claim against him must be barred. W. Anderson

claims that he should be granted "co-insured" status pursuant to this court's decision in *United Fire & Casualty Co. v. Bruggeman*, 505 N.W.2d 87. (Minn.App. 1993) *review denied* (Minn. Oct. 19, 1993).

In *Bruggeman*, this court adopted the reasoning from other jurisdictions prohibiting a subrogation claim against a negligent tenant for fire damage to the realty, the rationale being that an insurer, by agreeing to insure rental property, is on notice that the tenant will be occupying the premises, and thus, the insurer has actually insured the precise risk that materialized. *Id.* at 89. Additionally, the tenant and landlord have a shared proprietary interest in the realty, and the tenant pays the premiums, at least indirectly, to insure the realty. *Id.* These factors led this court to set forth a limited legal fiction wherein the tenant is granted a co-insured (or additional insured) status on the landlord's insurance policy for purposes of negating the insurer's subrogation claim against the negligent tenant for damages to the realty. *Id.*

*Bruggeman* does not apply to the case before us. As set forth above, TIG's and GenRoe's claims against the Andersons are not subrogation claims. *Bruggeman* specifically limited its application to subrogation claims. *Id.* at 89–90. The supreme court acknowledged that limitation in *Osborne v. Chapman*, 574 N.W.2d 64, 66 (Minn.1998), declining to directly decide whether to adopt or reject the Bruggeman doctrine because the *Osborne* case did not involve subrogation. Additionally, there is nothing in the record indicating that W. Anderson contributed to the premiums insuring the realty at the time of loss, nor is there anything in the record to suggest that Secura undertook the risk of insuring W. Anderson as of the time of loss. *Cf. Bruggeman,* 505 N.W.2d at 89 ("The insurer knows the risk it is undertaking when insuring a rental property." The insurer knows the property will be rented and tenants sometimes negligently start fires; the insurer has calculated that risk into the premium charged, and the tenant's rent pays the premium). Accordingly, W. Anderson's attempts to utilize the Bruggeman doctrine to establish a co-insured status under C. Anderson's policy with Secura, and to argue that TIG's and GenRoe's claims should be barred, must fail.

As noted above, W. Anderson did have an ownership interest in the realty as of the time of loss. As such, W. Anderson had an insurable interest in the property. This does not mean, however, that he had an *insured* interest. W. Anderson was not listed as an insured on Secura's policy in effect at the time of the loss, nor can W. Anderson acquire insured status through the Bruggeman doctrine or otherwise.

The Andersons also argue that TIG and GenRoe cannot be allowed to recover in excess of the amount they paid to settle Secura and Centennial Bank's claims, which is $45,000.[1] The Andersons claim that an insurer's subrogation claim is limited to the amount paid to the insured under the policy. The Andersons' assertion is basically correct, but immaterial; TIG's and GenRoe's claims are not subrogation claims. TIG and GenRoe took an assignment of the promissory note and mortgage securing that note from Secura following Secura's receipt of an assignment of the note and mortgage from Walker Bank.

1. The district court did limit L. Anderson's liability to this amount because she was not a co-obligor on the promissory note. Her liability arose only by way of her breach of the covenant against encumbrances when she signed off on the faulty transfer of the realty to JDOB.

The Andersons essentially argue that the assignments are illusory and contrary to law and that the district court should have categorized TIG's and GenRoe's lawsuit as one of subrogation despite TIG's and GenRoe's assertion that theirs were assigned claims. But Minn.Stat. § 65A.01, subd. 3, specifically allows for an assignment of the mortgage if the policy language so authorizes. In this case, the policy explicitly provides that, if the insured voids coverage by way of an intentional act causing the loss, the insurer pays the mortgagee and takes an assignment of the mortgage. The Andersons claim that Secura "satisfied" the mortgage with payment to the bank. This is not correct. Instead, Secura satisfied the debt owed to Walker Bank and took an assignment of the note on that debt and of the mortgage securing that debt. The mortgage remained in effect, pending the determination of whether or not C. Anderson was owed insurance coverage for the loss. The district court did not err in determining that C. Anderson and W. Anderson were jointly and severally liable to TIG and GenRoe for any and all damages allowed under the promissory note, including interest and recovery costs.

■ 2. The Andersons argue that TIG's and GenRoe's claims are barred because they were not asserted as counterclaims in C. Anderson's lawsuit against Secura for insurance coverage for the fire loss. The Andersons maintain that TIG's and GenRoe's claims for breach of contract and breach of warranty against encumbrances arise out of the same transaction or occurrence and were thus compulsory counterclaims under Minnesota Rule of Civil Procedure 13.01.

We disagree. TIG and GenRoe were not parties in C. Anderson's lawsuit with Secura. Additionally, TIG's and GenRoe's claims did not arise out of the fire causing damage to the realty. Instead, TIG's and GenRoe's claim of breach of warranty against encumbrances arose out of the flawed property transfer years after the fire, and the breach of contract claim arose only after it was determined that Secura did not owe C. Anderson coverage under the policy. At that point, TIG and GenRoe, as assignees of the note and mortgage, had the right to demand payment under the note. The Andersons' refusal to pay ripened TIG's and GenRoe's breach of contract claim, and TIG and GenRoe initiated suit in a timely fashion. The district court did not err in deciding that TIG's and GenRoe's claims were not barred as unasserted compulsory counterclaims in the earlier lawsuit between C. Anderson and Secura.

■ 3. The Andersons claim that the district court erred in awarding TIG and GenRoe attorney fees. The promissory note provided for interest and reasonable collection costs, including attorney fees, in the event of a default. The district court made a specific finding regarding fees and costs:

[TIG and GenRoe] have submitted evidence that their cost of collection against * * * Warren and Christopher Anderson is $25,691.98. This amount included $22,832.50 in attorneys' fees and $2,859.48 in costs and disbursements.

The amount of $25,691.98 represents the actual costs in attorneys' fees, costs and disbursements incurred in [TIG's and GenRoe's] collection efforts against * * * Warren and Christopher Anderson. Such costs are reasonable under the circumstances and were necessarily incurred in the prosecution of [TIG's and GenRoe's] claims against * * * Warren and Christopher Anderson.

Accordingly, the district court's finding and fee award was specific to the claims against W. Anderson and C. Anderson only, as opposed to the claim asserted against L. Anderson.

 "On review, this court will not reverse a trial court's award * * * of attorney fees absent an abuse of discretion." *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn.1987) (citation omitted). The district court found that the fees were reasonably incurred on the claims against W. Anderson and C. Anderson. The record supports the district court's findings. Accordingly, we will not disturb the fee award.

## DECISION

The district court properly granted TIG's and GenRoe's motions for partial summary judgment.

**Affirmed.**