*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JUSTIN THOMAS,

        Plaintiff-Appellee,

and

ANESTHESIA SERVICES AFFILIATES,
MICHIGAN AMBULATORY SURGICAL
CENTER, PHASE ONE REHAB, LLC, SPINE
SPECIALISTS OF MICHIGAN, PC,
LABORATORY SPECIALIST OF MICHIGAN,
LLC, and AQUATIC SOLUTIONS PHYSICAL
THERAPY,

        Intervening Plaintiffs-Appellees,

v

OLD REPUBLIC INSURANCE GROUP and IAT
INSURANCE GROUP,

        Defendants,

and

TRANSGUARD INSURANCE COMPANY OF
AMERICA,

        Defendant-Appellant.

UNPUBLISHED
July 20, 2023

No. 360898
Wayne Circuit Court
LC No. 20-000668-NF

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

        Defendant, Transguard Insurance Company of America (Transguard), appeals by delayed leave granted the trial court's order denying its motion for summary disposition brought under

MCR 2.116(C)(10).[1]  Plaintiff, Justin Thomas, was operating a truck in Wisconsin when the truck overturned after plaintiff failed to successfully negotiate a curve; no other motor vehicles were involved in the accident.  The crash allegedly occurred during plaintiff's course of employment as a mover.  Plaintiff sought no-fault benefits for his accident-related injuries under an insurance policy issued by Transguard.  The numerous intervening plaintiffs provided medical care, treatment, and services to plaintiff in connection with his injuries suffered in the truck accident.  The trial court ruled that a genuine issue of material fact existed concerning whether the insurance policy was effectively a no-fault policy that covered plaintiff's injuries.  We conclude that a factual issue exists with respect to whether plaintiff is entitled to medical payments under the "occupational accident" coverage found in the insurance policy.  Accordingly, we affirm.

## I.  FACTUAL AND PROCEDURAL HISTORY

In a first amended complaint, plaintiff alleged that he was in a motor vehicle accident on January 17, 2019, and that as a result he suffered physical injuries to his neck, back, shoulders, arms, hip, knees, Achilles tendon, ankle, and foot.  He further asserted that he incurred a traumatic brain injury.  Plaintiff alleged that he required medical treatment and rehabilitation, attendant care, and replacement services.  He contended that he was entitled to personal protection insurance (PIP) benefits under an insurance policy issued by Transguard and as mandated by the no-fault act, MCL 500.3101 *et seq.*  Plaintiff additionally maintained that he submitted a claim to Transguard seeking coverage for his damages but that Transguard refused to compensate plaintiff for his losses.[2]

In his deposition, plaintiff displayed a lack of memory and confusion on many matters, ostensibly resulting from the traumatic brain injury.  Plaintiff claimed that he suffered the head injury in the accident, but he could not recall the exact diagnosis, the name of the doctors who treated him, or the type of doctors from whom he received services.  Plaintiff testified that he did not own a vehicle, that he could not recall the last time that he owned a vehicle, that he did not remember if he owned a vehicle on the day of the accident, and that he had no specific memory regarding whether he had ever owned a vehicle.  Plaintiff was asked if he was employed at the time of the accident, and he responded that he worked for "Palmer."  He was then queried concerning whether he had ever worked for Morse Moving & Storage (Morse).  Plaintiff responded, "I worked for Palmer."  He subsequently reiterated and confirmed that he had worked moving furniture for "Palmer Moving & Storage" and not Morse.  But plaintiff could not recall when he had been employed by Palmer.

Plaintiff next testified that the accident occurred in Wisconsin, although he could not remember the name of the city or town in which the accident happened.  He could not recall why he was in Wisconsin or the type of vehicle that he was driving.  Plaintiff essentially asserted that

---

[1] *Thomas v Old Republic Ins Group*, unpublished order of the Court of Appeals, entered August 11, 2022 (Docket No. 360898).

[2] Plaintiff made identical claims against defendants Old Republic Insurance Group and IAT Insurance Group.  Transguard was a member of IAT, and the claims against IAT were dismissed.  A default was entered against Old Republic.  IAT and Old Republic are not involved in this appeal.

he could not remember anything about events immediately preceding the accident, the accident itself, and the immediate aftermath of the accident. Plaintiff later testified that due to the brain injury he "just cannot retain information." He then confirmed that he could not recall whether he was working at the time of the accident.

A Wisconsin motor vehicle crash report explained and detailed the nature of the accident. The crash report also indicated that the truck was "in transit"[3] when the accident occurred, that the crash took place in the town of Union, that the vehicle was a "box truck," that Ryder Truck Rental, Inc., owned the truck, that Ryder held an insurance policy with Old Republic, that the interstate carrier was "Morse Moving and Storage," that plaintiff was the driver, that he resided in Michigan, and that plaintiff was "driving too fast for conditions."

The Transguard insurance policy at the center of this dispute was issued in Illinois. The insurance policy was a "Group Vehicle Master Policy." According to the declarations page, the named insured was the "National Association of Independent Truckers, LLC" (NAIT), which was listed as having its address in Naperville, Illinois. The insurance policy's declarations page also provided that "[t]he insurance afforded is only with respect to the Coverage Parts for which a premium is shown below AND a Certificate indicating such coverage has been issued." The coverage chart that followed revealed that a "basic vehicle policy" included liability insurance, physical-damage insurance (comprehensive and collision), uninsured/underinsured motorists insurance, and "medical payments" insurance. The "medical payments" section identified two types of benefits that were generally available, which consisted of "Occupational Accident Extended" and "Occupational Compensation Extended." A "description of owned vehicles" stated: "Symbol 7: Specifically Described Autos – As Per Certificates."

A Transguard "evidence of coverage" document specifically identified plaintiff, a Michigan resident, as a certificate holder and certified that during the relevant period he had the following types of coverage: "non-trucking liability," "non-occupational accident," "personal contents," "occupational compensation," "extended liability," "physical damage," and "occupational accident."[4] With respect to the "occupational accident" coverage, the certificate provided:

> This is not Workers' Compensation Coverage. This is an Occupational Accident Plan and does not provide coverage for sickness. This policy provides coverage while under dispatch and on duty. Includes Contract Liability.

---

[3] All the language in the crash report was in capitalization, but we shall use lowercase letters when quoting the language of the report. When we later discuss the insurance policy, our quotations will similarly disregard capitalization of certain letters.

[4] The "evidence of coverage" constituted plaintiff's "certificate" of insurance. We shall use the terms "evidence of coverage" and "certificate" interchangeably for the remainder of this opinion.

The "limit of liability" relative to the "occupational accident" coverage stated: "See Coverage Summary: Plan O."[5] The "evidence of coverage" identified just one piece of "equipment," listing a 2001 international box truck, with a VIN ending in 7988.[6] The certificate further provided that NAIT was the group policyholder, that the lien holder/loss payee was ME Leasing, Inc., of Romulus, Michigan, and that the "motor carrier[s]" were "Morse Moving & Storage," which was headquartered in Romulus, Michigan, and "Allied Van Lines, Inc.," which was headquartered in Illinois. The "terms and conditions" associated with the "evidence of coverage" and expressly pertaining to "occupational accident" coverage required plaintiff's agreement that he was an independent contractor, that he was not and would not become "an employee of any motor carrier while this coverage is in force," and that he would reject and not file a claim for workers' compensation benefits.

In the body of the insurance policy itself, there was a part covering "medical payments – occupational accident extended coverage." Section V of this coverage part provided, in pertinent part:

> If an insured person incurs covered expenses resulting from an accident which caused an injury while insured under this coverage part, we will pay the reasonable and customary charge of such covered expenses incurred within the medical accumulation period, but not more than the maximum benefit, while insured, for Accident Medical . . . Expense shown in the SCHEDULE OF BENEFITS for the Plan indicated on your certificate.
>
> * * *
>
> We will issue payments for a covered expense on behalf of the insured person directly to the physician, hospital or medical service provider who provided such service or supply. If the insured person provides us with proof that he has already paid for the covered expense, we will issue payment to the insured person. [Quotation marks omitted.]

Section V also contained the following language that had to be satisfied before benefits could be recovered:

> The benefits for the coverage provided under this coverage part are described in the following benefit provisions. We will pay the benefits set forth below when we receive due proof that:

---

[5] Plan O—found in the body of the insurance policy—indicated that the maximum medical benefit was $5 million and that the maximum medical accumulation period was 104 weeks.

[6] The police report indicated that plaintiff had been operating a 2018 box truck with a VIN that ended in 4131.

> 1.     the insured person sustained an injury in an accident; and
>
> 2.     the injury occurred while performing the usual and customary duties of his occupation while on duty, under dispatch for and under contract to his contract carrier. [Quotation marks omitted.[7]]

Transguard moved for summary disposition under MCR 2.116(C)(10). Transguard argued that it did not provide a no-fault policy; rather, it issued an occupational insurance policy. At most, according to Transguard, plaintiff would be entitled to benefits capped at the maximum allowed under Michigan's Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.* Transguard further contended that the insurance policy limited the maximum period for medical benefits to 104 weeks. And plaintiff had selected a version of the policy that subordinated Transguard's liability to any no-fault insurer.[8] Transguard maintained that defendant Old Republic was the applicable no-fault insurer. Thus, Transguard was not the primary insurer responsible for medical benefits. Transguard further argued that for it to even be potentially liable, plaintiff had to demonstrate that he was in the course of his employment at the time of the accident. But plaintiff had presented no evidence establishing that he had been driving the truck in the course of his employment. Indeed, plaintiff testified that he was not working for the carrier contractor listed in the insurance policy, Morse, at the time of the accident.

Plaintiff responded by explaining that he was in fact working within the scope of his employment for Morse when the accident occurred. In the response to the motion for summary

---

[7] "On duty" is defined in the policy as meaning on-duty time as defined in 49 CFR 395.2 in relation "to the completion of drivers' logs." And 49 CFR 395.2 provides, in relevant part, that "[o]n-duty time means all time from the time a driver begins to work or is required to be in readiness to work until the time the driver is relieved from work and all responsibility for performing work." The language "under dispatch" is defined as "the period of time during which an insured person performs services on behalf of his contract carrier while:

> 1.     being en route to pick up a load or a trailer needed to pick up a load by the most direct route without deviation;
>
> 2.     picking up a load;
>
> 3.     en route to deliver a load by the most direct route without deviation;
>
> 4.     unloading a load, [;] or
>
> 5.     en route returning from delivering a load by the most direct route without deviation, to the place where the vehicle is normally garaged." [Quotation marks omitted.]

[8] Transguard did not cite any provision in the insurance policy or any other source in support of this proposition.

disposition, plaintiff claimed that he lost control of the truck while driving on a curve, that the truck flipped over, that he was seriously injured, and that he personally could not recall this information due to his brain injury. Plaintiff argued that the following language in the Transguard "evidence of coverage" or certificate provided him with Michigan no-fault benefits under MCL 500.3101(1) and (4):[9]

> [Plaintiff] acknowledges that NAIT, as group policyholder, has elected Uninsured Motorist limits of $25,000 per person/$25,000 per occurrence, the minimum established by the state of Illinois, to apply to the group policy; and accepts that only in the event that another state is determined to have jurisdiction, the maximum limits that will apply are the minimum limits (including rejection of coverage) permitted by that state for uninsured motorist, underinsured motorist, and personal injury protection coverage(s).[[10]]

Plaintiff did not specifically explain how this language allowed him to obtain no-fault benefits under the policy for an accident that took place in Wisconsin. Rather, plaintiff simply asserted that the quoted language provided no-fault coverage and that at the very least there was a factual question on the issue. With respect to whether plaintiff was acting within the scope of his employment at the time of the accident, plaintiff argued that it was clear that he could not remember the relevant facts at his deposition due to his brain injury. Plaintiff contended that Transguard attempted to improperly inflate his lack of memory to mean that he was not working within the scope of his employment when the accident transpired. Plaintiff maintained that

---

[9] MCL 500.3101 provides, in pertinent part:

> (1) Except as provided in sections 3107d and 3109a, the owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance and property protection insurance as required under this chapter, and residual liability insurance. Security is only required to be in effect during the period the motor vehicle is driven or moved on a highway.

> * * *

> (4) Security required by subsection (1) may be provided under a policy issued by an authorized insurer that affords insurance for the payment of benefits described in subsection (1). A policy of insurance represented or sold as providing security is considered to provide insurance for the payment of the benefits.

[10] We note that this provision was contained in the "terms and conditions" portion of the certificate and pertained to the "commercial business auto" coverage found in the policy. We further note that there appeared to be two different versions of the "terms and conditions" in the record, one of which did not contain the sentence following the semicolon in the language quoted by plaintiff. Regardless, the certificate or "evidence of coverage" relating to plaintiff did not show that he even had "commercial business auto" coverage. Accordingly, the provision cited by plaintiff was ultimately irrelevant.

Transguard had not satisfied its initial burden to support its position for purposes of summary disposition under MCR 2.116(C)(10). Most of the intervening plaintiffs concurred in plaintiff's response.

There was no hearing held on Transguard's motion for summary disposition. The trial court denied the motion in a praecipe order, indicating that the motion was denied "[p]ursuant to MCR 2.116(C)(10) as there are questions of fact regarding the extent of [Transguard's] liability to pay medical bills on behalf of the Plaintiff for injuries sustained in the automobile accident."

Transguard filed a late motion for reconsideration, arguing that the trial court neglected to decide whether the Transguard policy was an occupational accident policy, or rather, a no-fault policy. Transguard contended that its policy simply was not a no-fault policy; therefore, it could not be required to pay no-fault benefits. The trial court ordered oral arguments on the motion and authorized plaintiff to file a response. Plaintiff filed an answer to the motion, claiming that Transguard was seeking to cast its policy as a worker's compensation policy and limit benefits to those that would be available under such a policy. But, according to plaintiff, the insurance policy itself stated it was not a worker's compensation policy. Plaintiff now pointed to language in the policy addressing coverage that would be provided when a covered auto is away from the state where it is licensed:

b. Out-of-state Coverage Extensions

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.[11]

Plaintiff argued that this provision provided Michigan no-fault coverage because, although the accident occurred in Wisconsin, the truck was being used by Morse, a Michigan corporation based in Romulus, and by plaintiff, who was a Michigan resident and working as an independent contractor for Morse at the time of the accident. As support, plaintiff offered a copy of the police report regarding the accident.

---

[11] We note that this provision was contained in a part of the insurance policy regarding extensions of "business auto" coverage, which was not a listed coverage identified in plaintiff's certificate. Accordingly, this provision was entirely irrelevant.

At the hearing on the motion for reconsideration, the trial court, ruling from the bench, denied the motion. The trial court reasoned:

> I did read everything and I'm looking at my notes here, that's where I was hanging my head too. Like the policy provides for an exception when there's an out-of-state accident and then it reverts to become [a] Michigan no-fault policy. So it's not a worker's comp, it can't get worker's comp rates, I agree with Plaintiff in this case.

In its order denying the motion for reconsideration, the trial court stated "that the *occupational accident* policy of Transguard does not meet the minimum statutory requirements and must be converted to Personal Injury Protection benefits policy under Michigan's No-Fault Law." (Emphasis added.)

Transguard appeals by delayed leave granted.

## II. ANALYSIS

### A. APPELLATE ARGUMENTS

Transguard argues that the trial court erred by holding that there was no genuine issue of material fact regarding the extent of Transguard's liability to pay medical bills on behalf of plaintiff relative to injuries sustained in the truck accident. Transguard contends that plaintiff failed to create an issue of fact with respect to whether he was employed by Morse at the time of the accident. Transguard further maintains that regardless whether plaintiff was employed by Morse when the accident occurred, the Transguard insurance policy did not afford insurance coverage for the particular vehicle involved in the crash. Additionally, Transguard asserts that the trial court erred by holding that plaintiff was entitled to no-fault benefits under the occupational accidental injury coverage provided by Transguard. Transguard also claims that plaintiff was not afforded "business auto" coverage under the Transguard insurance policy. Finally, Transguard argues that even assuming that plaintiff was afforded "business auto" coverage under the insurance policy, the coverage did not permit the recovery of no-fault benefits by plaintiff.

Plaintiff argues that his mere lack of memory did not suffice to support Transguard's contention that plaintiff was not working within the scope and capacity of his employment at the time of the accident. Plaintiff asserts that Transguard essentially conceded this point in their motion for reconsideration, focusing instead on whether the language of the insurance policy provided no-fault coverage to plaintiff. Plaintiff further contends that the police report concerning the accident revealed that the vehicle being driven by plaintiff was owned and insured by Morse, a moving company, that the truck was in transit carrying goods when the accident occurred, and that plaintiff was a named insured. In other words, the information in the police report established that plaintiff was working for Morse when the accident took place. Plaintiff additionally maintains that the trial court never found that Transguard submitted evidence sufficient to support its burden to demonstrate a triable fact; therefore, plaintiff was not even obligated to come forth with documentary evidence regarding his employment for purposes of a (C)(10) motion.

Plaintiff next argues that regardless of his employment status, MCL 500.3111, as it existed at the time of the accident, required Transguard to pay plaintiff no-fault benefits. In January 2019, when the accident took place, MCL 500.3111 provided:

> Personal protection insurance benefits are payable for accidental bodily injury suffered in an accident occurring out of this state, if the accident occurs within the United States, its territories and possessions or in Canada, and the person whose injury is the basis of the claim was at the time of the accident a named insured under a personal protection insurance policy, his spouse, a relative of either domiciled in the same household or an occupant of a vehicle involved in the accident whose owner or registrant was insured under a personal protection insurance policy or has provided security approved by the secretary of state under subsection (4) of section 3101. [1972 PA 294.[12]]

Plaintiff also contends that the trial court properly ruled that he was entitled to no-fault benefits under the occupational accident coverage provided by Transguard. Plaintiff discusses other provisions in the insurance policy that he relied on in the lower court, arguing that they fully support his position that he was entitled to no-fault benefits under the policy. We already noted earlier in this opinion that those provisions in the policy, which we quoted, have no relevance to resolving this appeal because they were not part of any coverage identified in the certificate or evidence of coverage.

## B. STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). We also review de novo the interpretation and application of an insurance policy. *Cohen v Auto Club Ins Ass'n*, 463 Mich 525, 528; 620 NW2d 840 (2001).

## C. SUMMARY DISPOSITION PRINCIPLES UNDER MCR 2.116(C)(10)

MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

---

[12] MCL 500.3111 was amended by 2119 PA 21 and 22.

"A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Pioneer State*, 301 Mich App at 377. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). "[S]peculation is insufficient to create an issue of fact." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (2011). A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); see also MCR 2.116(G)(6).

## D. CONSTRUCTION OF INSURANCE CONTRACTS – GENERAL PRINCIPLES

In ascertaining the meaning of a contract such as an insurance policy, this Court gives the words used in the contract their plain and ordinary meaning as would be apparent to a reader of the instrument. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). A fundamental tenet of Michigan jurisprudence is that an unambiguous contract is not open to judicial construction and must be enforced as written, thereby respecting the freedom of individuals to arrange their affairs by contract. *Id*. at 468. In *Hunt v Drielick*, 496 Mich 366, 372-373; 852 NW2d 562 (2014), our Supreme Court observed:

> An insurance policy is similar to any other contractual agreement, and, thus, the court's role is to determine what the agreement was and effectuate the intent of the parties. We employ a two-part analysis to determine the parties' intent. First, it must be determined whether the policy provides coverage to the insured, and, second, the court must ascertain whether that coverage is negated by an exclusion. While it is the insured's burden to establish that his claim falls within the terms of the policy, the insurer should bear the burden of proving an absence of coverage. Additionally, exclusionary clauses in insurance policies are strictly construed in favor of the insured. . . . However, it is impossible to hold an insurance company liable for a risk it did not assume, and, thus, clear and specific exclusions must be enforced. [Quotation marks, citations, and brackets omitted.]

## E. DISCUSSION AND RESOLUTION

As reflected in our discussion of the various provisions in the "evidence of coverage" and the body of the insurance policy, the only potential avenue of relief for plaintiff was the "occupational accident" coverage afforded under the policy. The "occupational accident" coverage encompassed the payment of medical bills associated with injuries incurred in an accident. As we noted earlier, the other insurance policy provisions cited by plaintiff—the

"commercial business auto" and "business auto" coverages—were not relevant given that they pertained to coverages *not* held by plaintiff; they were not listed in his certificate.

With respect to the "occupational accident" coverage, plaintiff's entitlement to benefits was dependent on whether his injuries "occurred while performing the usual and customary duties of his occupation while on duty, under dispatch for and under contract to his contract carrier." Plaintiff's deposition testimony certainly did not supply any of the information demanded by the insurance policy for purposes of obtaining "occupational accident" benefits. Plaintiff's lack of recall can be explained by the traumatic brain injury. Plaintiff instead relies on the information contained in the police report. Transguard argues that the police report is hearsay and inadmissible, and thus it cannot be considered in the context of a motion for summary disposition under MCR 2.116(C)(10). But in *Latits v Phillips*, 298 Mich App 109, 113-114; 826 NW2d 190 (2012), this Court explained as follows:

> We begin by noting that this passage addresses plaintiff's argument that defendant's motion for summary disposition cannot be supported by factual statements from police reports because police reports are inadmissible as evidence at trial. Plaintiff's argument is flawed . . . . First, as the quotation alludes to, while a motion for summary disposition must be supported by admissible evidence, that evidence does not have to be in admissible form. In this case, defendant's reliance on those reports was in reference to the officers' personal observations, and those officers could have testified at trial to the substance of the material in the reports.

In this case, we will take into consideration the assertions in the police report. As stated earlier, the police crash report indicated that the truck was "in transit" when the accident occurred, that the crash took place in the town of Union, that the vehicle was a "box truck," that Ryder Truck Rental, Inc., owned the truck, that Ryder held an insurance policy with Old Republic, that the interstate carrier was "*Morse Moving and Storage*," that plaintiff was the driver, that he resided in Michigan, and that plaintiff was "driving too fast for conditions." (Emphasis added.) Making all legitimate inferences in favor of the nonmoving party, *Skinner*, 445 Mich at 162, we conclude that the crash-report information creates a genuine issue of material fact regarding whether plaintiff, at the time of the accident, was "performing the usual and customary duties of his occupation while on duty, under dispatch for and under contract to his contract carrier." Plaintiff was "in transit" in a moving truck outside his state of residence when the accident occurred, with Morse being specifically identified by the police officer as the interstate carrier. A juror could reasonably infer from this evidence that plaintiff was on-the-job as a contractor for Morse at the time of the accident, thereby triggering the "occupational accident" coverage and the right to recover medical payments.[13]

---

[13] We acknowledge that the box truck identified in the police report did not match the year and the VIN of the box truck identified in the insurance policy. But this issue first arose on appeal; therefore, plaintiff did not have the opportunity below to counter the argument or to supply documentary evidence on the matter. The parties are free to revisit this issue after remand.

The trial court also determined that the Transguard policy had to be converted to a PIP policy under the no-fault act. The trial court did not provide any reasoning in support of its ruling, and we cannot ascertain from the record whether the court may have relied on coverages in the insurance policy that were not applicable to plaintiff, as enumerated in this opinion. In light of the fact that we are remanding this case on the issue concerning whether plaintiff is entitled to medical payments under the "occupational accident" coverage, we direct the trial court, if necessary, to reexamine the issue regarding the extent of that coverage, i.e., whether it is limited by the terms of the insurance policy or by the terms of the no-fault act. Of course, that issue is only relevant should it be determined that the "occupational accident" coverage applies in the first place.

## III. CONCLUSION

We conclude that a genuine issue of material fact exists with respect to whether plaintiff is entitled to medical payments under the "occupational accident" coverage found in the insurance policy. Accordingly, we affirm, with the caveat that the court's determination that the extent of the coverage is governed by the no-fault act is to be reexamined on remand if necessary.

We affirm. We decline to tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly